**CONTINUATION IN SUPPORT OF AN APPLICATION FOR A**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Dustin Hurt, being duly sworn, depose and state as follows:

***Introduction and Agent Background***

1. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, since October of 2018. I am currently assigned to the Detroit Field Division, Lansing Satellite Office. Prior to being assigned to the Lansing Office, I was assigned to the ATF Flint Field Office. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Before working for the ATF, I was employed by the Michigan Department of State Police (MSP) for approximately seven years. Before working for the Michigan State Police, I was a local police officer for the Grand Ledge (MI) Police Department for approximately three years. I held numerous positions with the MSP, including Detective Sergeant in the Polygraph Unit and Task Force Officer with the FBI's Safe Streets Task Force (Flint, MI). During my employment with ATF and MSP, I have conducted or participated in numerous criminal investigations focused on firearms, armed drug trafficking, violent crime, criminal street gangs, and other violations of federal law. The facts in this Continuation come from my personal observations, training, experience, and information obtained from other witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

2. I submit this continuation in support of an application for a warrant for ALIJAH BAILEY-THOMAS for possession of machineguns in violation of 18 U.S.C. § 922(o).

***Facts in Support of Complaint and Arrest Warrant***

3. Over several months, an ATF agent working in an undercover capacity (UCA) developed a buyer-seller relationship with a source of information (the "SOI") who is charged elsewhere and who connected UCA with sellers of machine gun conversion devices (MCDs) on several occasions. UCA agreed to pay the SOI $100 for each time the SOI connected UCA with a seller of MCDs.

4. On June 1, 2026, the SOI connected UCA with BAILEY-THOMAS so that BAILEY-THOMAS could sell UCA five MCDs, commonly referred to as "Glock switches," as described further below.

5. Between May 18, 2026, and June 1, 2026, the SOI and UCA spoke on the phone and through text message regarding the sale and purchase of MCDs. The SOI informed UCA that he had a source of MCDs who could do a sale on June 1, 2026.

6. On June 1, 2026, the SOI and UCA met at a Meijer in Lansing, Michigan. The SOI got into the undercover vehicle (UCV) and directed UCA to a secondary location to meet the source of supply.

7. UCA drove the apartments located at 5900 Richwood Street in Lansing, Michigan 48911. The SOI made a phone call, and, moments later, BAILEY-THOMAS exited the apartment complex and entered into the rear passenger seat of the (UCV).



8. BAILEY-THOMAS produced a package of foil that contained MCDs.

9. BAILEY-THOMAS noted that, for one of the MCDs, one of the "little pieces, the back piece" on the MCD was missing. BAILEY-THOMAS opened the foil package to reveal five MCDs. BAILEY-THOMAS showed UCA that the "gold one" was missing the "sear" part of the MCD.

10. The parties agreed to a price of $1,360 for the 5 MCDs—$300 each for the complete devices and $160 for the one missing the sear. UCA provided the SOI with the previously recorded government funds. The SOI counted the funds, took a portion for himself, and provided BAILEY-THOMAS the remainder.

11. UCA asked if the switches were functional by asking if BAILEY-THOMAS had "fucked with" the MCDs and if they are "holding up," to which BAILEY-THOMAS answered in the affirmative. The below listed photograph shows the MCDs purchased from BAILEY-THOMAS on this date.



12. An MCD, often referred to as a "Glock switch," "switch," "button," or "auto sear," is a mechanism that can be attached to the backplate of the slide of a Glock pistol. Glock pistols are designed to fire semi-automatically, which is defined as one projectile being fired from a firearm with each single pull of the trigger. Inside a Glock pistol is a mechanical part identified as a sear which stops the pistol from firing more than one round with each trigger pull. When the MCD is inserted into the backplate of the Glock pistol, it allows for the mechanical sear inside the firearm to not engage, thus making the pistol fire fully automatic or as a machine gun as defined by Title 26 U.S.C. § 5845(b). I have spoken with Glock Inc., and have been advised they do not, and have never manufactured, these devices.

13. BAILEY-THOMAS appears in rap videos online in which he discusses "switches" and shooting through a "50 round mag," referring to the automatic function of an MCD installed on a firearm with a large-capacity magazine.

14. Based on the secretive transaction, the discussion regarding whether the MCDs "hold up," BAILEY-THOMAS talking about the missing piece of the MCD, and online videos where BAILEY-THOMAS raps about switches, there is probable

cause to believe that BAILEY-THOMAS knew the function of the MCDs that he possessed and transferred.

## Conclusion

15. I respectfully submit that there is probable cause that, on June 1, 2026, as described above, BAILEY-THOMAS knowingly possessed and transferred machineguns in violation of 18 U.S.C. § 922(o).